1                        SACRAMENTO, CALIFORNIA

2                  THURSDAY, JANUARY 19, 2012; 4:00 P.M.

3                             ---o0o---

4

5              THE COURT:  Calling civil case 11-0125, Sierra Pacific

6    Industries versus United States Department of Agriculture.

7              This is on for an in-court hearing regarding request

8    to seal.

9              THE COURT:  Appearances, please.

10             MR. OLSON:  Carl Olson representing the Sacramento

11   Bee.

12             THE COURT:  Good afternoon, Mr. Olson.

13             MS. FLEENER:  Janlynn Fleener from Downey Brand for

14   Sierra Pacific.

15             THE COURT:  Good afternoon, Ms. Fleener.

16             MS. AMARAL:  Annie Amaral from Downey Brand on behalf

17   of Sierra Pacific.

18             MR. LINKERT:  Richard Linkert from Matheny Sears

19   Linkert and Jaime for W.M. Beaty and the Walker family land

20   owners.

21             THE COURT:  Good afternoon, Mr. Linkert.

22             MR. PICKLES:  Todd Pickles on behalf of the USDA in

23   this present action and on behalf of the United States in the

24   related Moonlight case.  Joining me at counsel table are

25   Kelli Taylor and Richard Elias from the United States

1    Attorney's Office.

2          THE COURT:  Good afternoon to you all.

3          This is on for plaintiffs' request to seal and a

4    motion to intervene.  Before we get into the merits, let me

5    make a disclosure.  I don't believe this disclosure requires

6    my recusal, but I want to make certain you're aware of.

7          I am personal friends with Susan McClatchy.  This has

8    nothing to do with the operations of the Bee, as I understand

9    it, but she has been a member of the family that owns

10   significant shares.  I've never talked about day-to-day

11   operations, but I wanted to disclose that personal

12   friendship.

13         I've considered it.  I don't believe it raises any

14   grounds for recusal, but if you feel otherwise, I'm happy to

15   listen to anyone here.  I'm happy to give you time if you

16   need to think about that.

17         MR. PICKLES:  On behalf of the United States, we have

18   no objection or otherwise raising any issues of recusal.

19         THE COURT:  Ms. Fleener or Ms. Amaral?

20         MS. FLEENER:  No objection.

21         THE COURT:  Mr. Linkert?

22         MR. LINKERT:  No objection.

23         THE COURT:  Mr. Olson?

24         MR. OLSON:  No objection.

25         THE COURT:  I have a few questions, but, first, I'm

1    prepared to grant the motion to intervene.  Does anyone want

2    to say anything about that decision before I make it final?

3              MR. PICKLES:  No, Your Honor.

4              THE COURT:  All right.  So I'm granting the motion to

5    intervene.  But my questions, first for Ms. Fleener and

6    Ms. Amaral, you do drop a footnote, footnote four on page

7    three.  As the government knows, I have previously made a

8    decision that the employee's deposition testimony was not

9    material to the narrow APA question I have to decide.

10              In the footnote, Sierra Pacific indicates its strong

11   belief that the information must be considered.  Without my

12   having to read the brief, help me understand, if you can, why

13   the deposition excerpts are material, given the order I've

14   already issued.

15              MS. FLEENER:  Yes, Your Honor.  And, of course, that

16   order was issued in response to our motion to augment the

17   record to add the deposition transcripts to the record

18   itself.

19              THE COURT:  Correct.

20              MS. FLEENER:  The way we read the court's order was

21   that it did not preclude the court from considering the

22   substance of the deposition testimony itself.  The reason for

23   that is addressed in our motion for summary judgment.

24              But the fact that the government did not, according to

25   it, consider what information and knowledge each witness may

```
 1    have had, and that information is reflected in the deposition

 2    transcripts, the fact that that should not be part of the

 3    administrative record because the government did not consider

 4    it is not determinative of the separate question of whether

 5    or not the court can look at each witness' deposition

 6    testimony in order to evaluate whether the government's

 7    decisions were arbitrary and capricious.

 8              THE COURT:  You're relying on case law?

 9              MS. FLEENER:  Yes, Your Honor.

10              THE COURT:  But what is the case law you're relying

11    on?

12              MS. FLEENER:  Yes.  It's all cited in our summary

13    judgment papers.

14              THE COURT:  In order to -- I'm not prepared to read

15    that motion.  I need to know the pinpoint cites that would

16    support what you're saying.

17              MS. FLEENER:  The first case is Ranchers Cattlemen

18    Action Legal Fund versus U.S. Department of Agriculture, and

19    the relevant discussion in that case is from page 1115 where

20    the court addresses the standard for ruling on an APA motion

21    and whether the government's actions were arbitrary and

22    capricious.

23              We also discussed the Ceroni versus 4Front Engineered

24    Solutions case.  That's a 2011 District Court case from the

25    District of Colorado, as well at the Vioxx Products Liability
```

1    case, and the pinpoint to the Vioxx case is 334.

2           In each of those cases, the court looked at extra

3    record evidence to evaluate whether the government's actions

4    were arbitrary and capricious.

5           THE COURT:  Help me understand your position,

6    Mr. Pickles or Ms. Taylor, in response to that argument.  Are

7    you prepared to address that in more detail?  I know your

8    brief raises it.

9           MR. PICKLES:  Yes, Your Honor, we are.  The test, at

10   least in the Ninth Circuit case law that's cited in Sierra

11   Pacific's brief, is the same as the test that this court

12   applied in its December 22nd order.  The same issue was

13   presented there as is now again raised here, whether or not

14   the court should consider extra record evidence in making its

15   determination.

16          The court has already addressed that very point in its

17   order of December 22nd applying the same test, and the

18   particular prong that was advocated back then, and, I guess,

19   is now the basis on which Sierra Pacific continues to rely,

20   is whether or not the agency considered all relevant factors.

21          The court already looked at that issue and determined

22   that the deposition contents are immaterial with respect to

23   this issue.  At this point there's been no request for

24   reconsideration made.  I can inform the court, having read

25   the papers by Sierra Pacific, they have not set fourth a

1    reason by which this court's analysis is somehow erroneous

2    and needed to be followed.

3          Instead, they essentially disregarded it and presented

4    these documents again, and that's the reason, at least in the

5    context of this narrow APA action and this particular issue

6    of request to seal, the documents need not be filed publicly,

7    either publically or under seal, because they're not part of

8    the court's consideration.

9          THE COURT:  Ms. Fleener, just a brief response, if you

10   have any.  This is the issue, the threshold issue, I believe

11   the court needs to resolve.  I will then turn to Mr. Olson

12   and talk about the sealing question.

13         MS. FLEENER:  I understand, Your Honor.

14         The issue on the motion to augment the record was

15   whether the deposition transcripts would be part of the

16   administrative record.  The issue here is different.  The

17   issue here on our motion for summary judgment is whether the

18   deposition transcripts can be considered by the court as

19   evidence on whether the government's decisions were arbitrary

20   and capricious, and those transcripts do not have to be part

21   of the administrative record for the court to consider them.

22         We believe the deposition transcripts, the substance

23   set forth therein, shows what information and knowledge the

24   witnesses have.  It was information available to the

25   government that the government did not consider.  So the

1   absence of consideration of the evidence is absolutely

2   relevant to this court's decision under the APA whether the

3   government acted in an arbitrary and capricious matter.

4          THE COURT:  In good faith, you're telling me you

5   believe the court did not previously address that question?

6          MS. FLEENER:  That's our reading of the court's order,

7   given the issue before the court.  The government also makes

8   the argument that in support of its decision to deny the

9   deposition testimony that that would present an undue burden

10  on the government.

11         The fact that the witnesses have previously testified

12  and been deposed and the government allowed that to go

13  forward is a fact that this court can consider, and the

14  deposition testimony, which we submitted with our summary

15  judgment motion, shows the fact that they were allowed to

16  testify.

17         Finally, the government takes the position that the

18  deposition transcripts are a perfect substitute for live

19  testimony and that's why it made its decision not to allow

20  the witnesses to testify at trial.  But the court, when it

21  examines the deposition transcripts, will see that the

22  transcripts themselves are not a perfect substitute for that.

23         THE COURT:  Mr. Olson, my question for you is this.  I

24  don't see this at this point as a straightforward question of

25  whether or not the documents should be unsealed, given the

1    court prior orders in this case.

2         For the sake of argument, can you help me understand

3    what your position would be if I conclude that the exhibit

4    should be stricken, as the government has requested, because

5    the request to put them into the record is essentially using

6    the court's docket for improper purposes.

7         Would your position then be moot?

8         MR. OLSON:  No, Your Honor.  The strong presumption of

9    access that applies to court records applies regardless of

10   how the court ends up ruling on the summary judgment motion.

11   In any summary judgment motion, there are evidentiary

12   objections made, and a lot of the material filed in

13   connection with any summary judgment motion may be deemed

14   irrelevant, but that doesn't affect the fact that the public

15   has a right of access to the documents that are filed.

16        The compelling reasons have to be shown to seal

17   anything.  Neither of the parties have advanced any

18   compelling reasons why there should not be right of access to

19   these.

20        THE COURT:  But the point is that I've already made a

21   determination that these deposition transcripts are not

22   material, and, therefore, I may, if I decide I have the

23   inherent authority to do so, I may strike -- I may not allow

24   the filing of the exhibits period.

25        If that's my decision, does that moot your motion?

1          If I allow them to be filed as exhibits in support of

2     the motion, then I understand your argument.  I think it's

3     well taken, but if I strike the exhibits because I find that

4     they violate the order I previously issued, doesn't that moot

5     your motion?

6          MR. OLSON:  No, it doesn't, Your Honor, because I

7     think the appropriate thing to do here is -- the motion has

8     been filed.  The exhibits should be filed.  And if the court

9     says they're irrelevant, that's fine, but the public should

10    know what the court deemed irrelevant because that promotes

11    the public understanding of the judicial process which is at

12    the heart of the public right of access to documents.

13         THE COURT:  Again, I understand that argument.

14         What is the case law that addresses this set of

15    circumstances where the court has issued an order finding

16    something not material and then the court is essentially

17    enforcing that order?

18         If I decide to do that, I still need to think

19    carefully what Ms. Fleener is saying.  Is there case law that

20    addresses that set of circumstances?

21         MR. OLSON:  It's the Kamakana case that provides the

22    right of access to dispositive motions.  In any dispositive

23    motion, there's a chance that one party is going to lose and

24    all the evidence that they put forth in support of their

25    position is going to be held not to create a triable issue of

1   material fact.

2          That doesn't mean that the public doesn't get to see

3   what evidence they marshaled.  I think it's no different than

4   filing of the complaint in a 12(b)(6.)  You get to find out

5   what the complaint said regardless of whether the 12(b)(6) is

6   granted, even if there was no case.

7          THE COURT:  But here there's a prior court order that

8   sets some boundaries potentially.  That's the difference

9   here.

10          Help me understand, Mr. Pickles, even if I do strike

11   the exhibits -- I haven't considered the contents of those

12   exhibits.  I haven't looked at them at this point, but

13   because compelling -- the Compelling Reasons Test appears not

14   to have been met, why not simply publish them anyway so

15   everybody knows what we're talking about?

16          MR. PICKLES:  Your Honor, in addressing that question

17   as well as the previous one, I think the focus that's been

18   raised is if the court is going to grant or deny the motion,

19   even if it finds these documents to be material, that would

20   have been considered.

21          Obviously, that's already happened.  In assuming the

22   court analysis holds here, which I think it should, these

23   documents should never have been filed in the first instance,

24   and so the court wouldn't even get to the question of

25   compelling interests, because in a way, it would be abiding

1    by the contravention of the court's order.  And so I just

2    don't think the court can address that in this particular

3    circumstance.

4           If in other circumstances and to what extent the court

5    wants to entertain those arguments, we can do so, but right

6    now in this APA action, I believe that first question about

7    whether or not these documents are properly before the court,

8    assuming they're not, and I think that's the correct call, it

9    moots the issue of compelling interest, regardless how

10   compelling those interests are or not.

11          THE COURT:  Of the cases you've cited to the court, is

12   any one on all fours with the circumstances?

13          MR. PICKLES:  No.  Most of those cases deal with

14   the -- assuming the court were to consider the issue of the

15   Privacy Act -- in other words, the second question, the way

16   that I look at it, then that's where those cases go.  Those

17   cases are primarily about the production of the records

18   themselves as opposed to the First Amendment issues, if you

19   will.

20          I think probably the Laxalt case is the one that

21   discusses most strongly just the kind of analysis the court

22   should employ under the Privacy Act.  That would be the one I

23   would direct the court to.

24          But as far as the particular interest about when a

25   document gets filed with the court, whether or not it should

1    be in the public record versus under seal, none of the cases

2    that are cited in our brief address that particular issue.  I

3    just don't think it comes up all that often in this Privacy

4    Act context.

5              THE COURT:  Mr. Olson, anything further to say?

6              MR. OLSON:  Mr. Pickles cited the Laxalt case, and

7    that actually helps us because that case holds that the

8    Privacy Act does not replace the usual discovery standards,

9    and the court says at 809 F.2d, 888:

10                         We find no basis for inferring that the

11                         statute replaces the unusual discovery

12                         standards of the FRCP with the different

13                         and higher standards.

14             So there's nothing in the Privacy Act that trumps the

15    right of access to documents filed in connection with a

16    dispositive motion.  The fact that a protective order was

17    filed in this case does not meet the compelling interest

18    standard either.  That's the square holding of the Kamakana

19    case.

20             Again, these document have been filed.  The court may

21    or may not find that they are relevant.  The court may reject

22    summarily Sierra Pacific's argument, and we don't have a dog

23    in that hunt, but we do have a keen interest in the public's

24    right to know what the contentions are and what the evidence

25    is.

1          This is no different than any other situation in which

2     a party makes arguments, someone else tries to strike the

3     evidence.

4          The court may in many cases reject half of the

5     evidence or all of the evidence, but that does not mean that

6     the public doesn't get to see what the evidence is, and the

7     public has an overwhelming right to know what the court

8     considered, what evidence the court rejected, and to

9     understand the process through which the court reached its

10    decision.

11         THE COURT:  I understand all of that.  I think the --

12    I'm not relying on the protective order.  The protective

13    order lets the court make the ultimate call.  I'm not bound

14    by that protective order.  I'm looking at language in Nixon,

15    which does note:

16                   That while broad, the right of access is

17                   not absolute and can be denied where court

18                   files have become a vehicle for improper

19                   purposes.

20         Here the issue is not what I consider or not once I

21    reach the merits of the motion, it's:  Do I restrict the

22    record before I get to consideration of the merits of the

23    motion, finding that the effort to get these exhibits into

24    the record is in violation of an order I've made previously;

25    therefore, using the court docket for an improper purpose?

1          I haven't found case law, but those are the

2     circumstances with which the court is faced.

3          Do you have anything more to say about what the case

4     law tells us in this kind of circumstance?

5          MR. OLSON:  Respectfully, first of all, I don't think

6     there's any evidence or even an allegation that the court

7     files have been used for an improper purpose.

8          THE COURT:  But the court is raising that in its

9     inherent authority, given the order I previously issued.

10          MR. OLSON:  And I think that the remedy there would be

11     perhaps even to sanction the attorneys for doing that, but it

12     would not be to deny the public the right to know what is in

13     these papers.

14          You have a motion for summary judgment which is not

15     filed under seal.  You have evidence filed with it, much of

16     which actually is public.  The government hasn't made a

17     motion to strike this.  The government says:  Well, Your

18     Honor, you should reject their motion out of hand.

19          And as I said before, we don't have any dog in that

20     hunt, whether the court rejects their motion, but we do

21     strongly feel that under the Kamakana case controlling Ninth

22     Circuit precedence, that they have to show compelling reasons

23     to seal anything.

24          They haven't shown any compelling reasons.

25          THE COURT:  I agree that's the standard I would apply

1    if I get to that point.

2         Final question for Ms. Fleener, Ms. Amaral:  Would you

3    dispute that the court has inherent authority to strike from

4    the record these exhibits if I find them to be immaterial in

5    light of my prior ruling?

6         MS. FLEENER:  No, we would not.

7         THE COURT:  I would give each side a minute, starting

8    with Ms. Fleener, Ms. Amaral.

9         Anything more you want the court to know?

10         MS. FLEENER:  Yes, Your Honor.  I would like to be

11   heard briefly in response to Mr. Pickles' comment that we

12   violated the court order and in response to the court's

13   questions about the previous order on the motion to augment

14   the administrative record.

15         The issue here and on our motion for summary judgment

16   is whether the government should have considered the

17   deposition testimony.  It's our position that it should have.

18   The issue previously when we made the motion to augment the

19   record, because the government said it did not consider that

20   testimony, it opposed the motion to augment, and we

21   understood that that's why the court denied the motion to

22   augment, because the government had not considered that

23   deposition testimony.

24         The issue here is different, and because of the

25   framing of the previous motion and the court's order, we

 1    understood that we were allowed to file the deposition

 2    testimony, and for the reasons we discuss in our motion for

 3    summary judgment, the court is absolutely allowed and should

 4    consider the deposition testimony.

 5         We would never have done anything to intentionally

 6    violate the court's order.

 7         THE COURT:  Mr. Pickles, Ms. Taylor, anything further?

 8         MR. PICKLES:  Your Honor, I think we've addressed this

 9    issue.  I think the court order was clear.  The analysis the

10    court employed is the very analysis that was offered to the

11    court about the contents versus the fact of testimony.  That

12    argument has been addressed and rejected.

13         I do want to make clear -- I hope it's clear in the

14    papers -- our position with respect to the underlying merits;

15    simply, we have not taken that position the documents that

16    are filed, these documents, personnel records, should never

17    be in the public docket.  We have simply addressed to the

18    court the fact that they should never have been filed at all.

19    I think those are two very different things.

20         With respect to the second issue, we have no problem,

21    and, certainly, it's     at the court's discretion to

22    revisit the protective order or privacy order that's been

23    entered.  But until either both or one of those are changed,

24    we are still bound by those orders limiting what we can do

25    with any of the personnel records.

1          To the extent the court is going to revisit those, as

2    we've put in the papers, we wanted to make sure that the

3    court is aware, however the court goes about applying the

4    analysis, that the third party's interest in this case, the

5    employees, is one that needs to be taken into account, but

6    we, the United States, are not able to advocate one way or

7    another on their behalf.

8          However the court wants to go about considering those

9    interests, and if we can assist the court, but I just wanted

10   to make clear nothing in our papers can and should be

11   construed to either be for or against these records.  The

12   Privacy Act prohibits us from being a part of that.

13         THE COURT:  Is it your position the Privacy Act

14   requires the court to initiate efforts to obtain the

15   employees' position?

16         MR. PICKLES:  No.  The two ways -- the Privacy Act

17   envisions that -- first of all, the Privacy Act basically

18   says, you, government are not allowed to disclose

19   information, save in this case, two exceptions; one, the

20   employee consents; two, the government -- I'm sorry -- the

21   court orders you or permits you to.

22         We have taken it upon ourselves and we did so in the

23   previous iteration of the same issue back in November of 2010

24   to contact employees to ascertain their position.  The same

25   thing -- and former employees too.  The Privacy Act is about

1    individuals, not employees.

2         And we've tried to ascertain a position to make it

3    known to the court, but because we don't represent these

4    employees and former employees and because the Privacy Act

5    says you, government, don't get to make that decision, it's

6    somebody else.  Beyond just informing the court of what those

7    employees or former employees positions are, we can't do much

8    more.

9         THE COURT:  But they could step forward if they had a

10   concerns, and the court has not heard from the employees.

11        MR. PICKLES:  Sure.  I can inform the court that at

12   least one of the employees is present today; however, the

13   court -- that's to the court's discretion how it will permit

14   that position to be made known.

15        We were informed by a former employee who resides in

16   Northern California or the north part of the state that he

17   was unable to attend because of work commitments, and so

18   beyond that, I can't say much more.

19        THE COURT:  No employee has checked in to indicate a

20   request to speak to the court.

21        Is there anyone present in the audience who would like

22   to address the court or make a request?

23        MS. JUSKA:  Yes.

24        THE COURT:  I'll allow you to come forward and

25   identify yourself.  You are representing yourself?

1          MS. JUSKA:  I am.

2          THE COURT:  It's your request to say something.  We

3    are creating a record here today.  You're under no obligation

4    to make a statement.

5          MS. JUSKA:  I understand.

6          THE COURT:  Identify yourself for the record.

7          MS. JUSKA:  Karen Juska.

8          THE COURT:  J-U-S-K-A?

9          MS. JUSKA:  Yes.  Excuse me.  I'm sorry.  I just would

10   like my right to Privacy Act be honored.

11         THE COURT:  All right.

12         MS. JUSKA:  That's all that I have.

13         THE COURT:  All right.  That request is noted and is

14   made a part of the record, and the court will take that into

15   account.

16         MS. JUSKA:  Thank you.

17         THE COURT:  Mr. Olson, I would give you the final

18   word, if there's anything more you would like to say.  I will

19   take this under submission and try to make a decision very

20   promptly, taking into account what I've heard today.

21         MR. OLSON:  Yes, Your Honor.  The appropriateness of

22   making court files public is accentuated in cases where the

23   government is a party, as in this case.  That's the Smith

24   case, 9506 F.2d at 650.

25         The Kamakana case holds -- and this is 447 F.3d at

1    1185.   This is a passage we did not cite in our brief that:

2                        Simply invoking a blanket claim, such as

3                        privacy or law enforcement will not,

4                        without more, suffice to exempt a document

5                        from the public's right of access.

6         You have overwhelming rights of public access at stake

7    here and no interests have been put forth by either party to

8    exempt these papers from the right of public access.  If the

9    court deems their motion unmeritorious, it should deny it,

10   but should not deny the public's right of access to the

11   documents filed in connection with that motion.

12        Thank you.

13        THE COURT:  All right.

14        Thank you all.  I am going to submit the matter and

15   issue something shortly.

16        Ms. Juska, if you are willing to provide your contact

17   information to Ms. Schultz, we'll include you in any notices

18   we issue.

19        Thank you very much.

20                        (Whereupon, proceedings concluded at

21                        4:39 p.m.)

22                        ---o0o---

23

24

25

1                           CERTIFICATION

2

3      I, Michelle L. Babbitt, certify that the foregoing is a

4      correct transcript from the record of proceedings in the

5      above-entitled matter.

6

7

8

9                   /s/ MICHELLE L. BABBITT
                    MICHELLE L. BABBITT CSR #6357
10                  Official Court Reporter
                    United States District Court
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF CALIFORNIA

3                        ---oOo---

4       BEFORE THE HONORABLE KIMBERLY J. MUELLER, JUDGE

5                        ---oOo---
    SIERRA PACIFIC INDUSTRIES, et
6   al,

7
                                  No. S-CV-11-01250 KJM
8          Plaintiffs,

9   vs.

10  UNITED STATES DEPARTMENT OF
    AGRICULTURE,
11
             Defendant.
12  _____

13

14                        ---oOo---

15                 REPORTER'S TRANSCRIPT

16            PLAINTIFFS' REQUEST TO SEAL

17
                 THURSDAY, JANUARY 19, 2012
18

19
                          ---oOo---
20

21

22

23

24

25   Reported by:      MICHELLE L. BABBITT, CSR #6357

```
 1                      APPEARANCES

 2

    For the Plaintiff Sierra Pacific:
 3
                DOWNEY BRAND LLP
 4              621 Capitol Mall
                18th Floor
 5              Sacramento, California 95814
                BY:  JANLYNN FLEENER
 6              Attorney at Law

 7

    For the Plaintiffs W.M. Beaty and Walker Family Land Owners:
 8
                MATHENY SEARS LINKERT & JAIME
 9              3638 American River Drive
                Sacramento, California 95853
10              BY:  RICHARD LINKERT
                Attorney at Law
11

12  For the Defendant:

13              UNITED STATES ATTORNEYS OFFICE
                501 I Street, Suite 10-100
14              Sacramento, California 95814
                BY:  TODD PICKLES
15                   -and-
                     KELLI TAYLOR
16              Assistant United States Attorneys

17

    For the Intervenor Sacramento Bee:
18
                RAM & OLSON
19              555 Montgomery Street
                Suite 820
20              San Francisco, California 94111
                BY:  CARL OLSON
21              Attorney at Law

22

23

24

25
```